IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODNEY LOVE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 15-CV-937-SMY-RJD |
| RICHARD HARRINGTON, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Rodney Love, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Specifically, Plaintiff alleges that he was denied due process when he was not allowed to call witnesses at a disciplinary hearing held on November 27, 2013 (Doc. 7). He proceeds on one count: Defendants Veath and Hart violated Plaintiff's Fourteenth Amendment right to due process in relation to the November 20, 2013 disciplinary report and subsequent administrative proceedings (Doc. 7).

This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. 68) and the Brief in Support of Plaintiff's Motion for Summary Judgment, construed by the Court as Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 73).[1] For the following reasons, Defendants' motion is **GRANTED**.

---

[1] The requested relief in Plaintiff's *Brief in Support of Motion for Summary Judgment* is to deny Defendants' Motion for Summary Judgment (Doc. 73). Document 73 also included documents titled: Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion, Declaration in Opposition to Defendants' Motion for Summary Judgment, and Plaintiff's Statement of Disputed Facts. The Court therefore construes the Plaintiff's Motion for Summary Judgment (Doc. 73) as a Response to Defendants' Motion for Summary Judgment.

**Factual Background**

Plaintiff Rodney Love was an inmate at Menard on November 20, 2013 (Plaintiff's Deposition, Doc. 69-1 at 14). On that day, an Incident Disciplinary Report was filed by Correctional Officer Shel Stillwell-Davis, citing Love for two offenses that occurred on the same date: 103. Bribery-Extortion; and 601. Aiding & Abetting, Attempt, Solicitation or Conspiracy (Disciplinary Report, Doc. 7 at 15-16). Love was provided a copy of the disciplinary ticket (Doc. 69-1 at 20). He did not detach and return the witness request slip portion of the Disciplinary Report (*Id.* at 25-26). Love alleges that he mailed an envelope to the Adjustment Committee on November 22, 2013, enclosing a request that his cellmate, Seith Williams, be a witness at his hearing (*Id.*).

On November 27, 2013, the Adjustment Committee held a hearing concerning the November 20, 2013 ticket (*Id.* at 27). Love was questioned at the hearing, but no witnesses were interviewed (*Id.* at 28). Love alleges that he requested his witnesses be interviewed during the hearing (*Id.*). However, the Adjustment Committee Report notes, "No Witness Requested" (Adjustment Committee Final Summary Report, Doc. 7 at 17). The Adjustment Committee found Love guilty on both counts and disciplined Love with one year C Grade, one year segregation, and one year commissary restriction (*Id.*). Love served two months in segregation at Menard (Doc. 69-1 at 39). He was transferred to Pontiac Correctional Center ("Pontiac") in February 2014 where he remained in segregation for nine months (*Id.*). Love served a total of eleven months in segregation (*Id.* at 85).

Love asserts that the Pontiac Segregation Program in and of itself rises to the level of an atypical and significant hardship, thus triggering due process protections (Love's Complaint,

Doc. 7 at 6). Specifically, he complains about the conditions at the prison such as excessive noise, excessive light, inmates throwing feces and urine, unsanitary conditions, verbally abusive inmates, limited interaction with other prisoners, and limited interaction with visitors (Doc. 7).

During his deposition, Love testified to the following. The showers in segregation at Pontiac were not clean (Doc. 69-1 at 52) although they are cleaned by the "farm worker inmates" after everybody takes showers on the same day (*Id.* at 57). Love was allowed showers two or three times a week while in segregation at Pontiac (*Id.* at 53). He was provided an indigent bag of toiletry items, including shampoo, soap, toothbrush and toothpaste (*Id.* at 58). Love had shower shoes while at Pontiac (*Id.* at 59).

Love was subjected to "verbal warfare" from other inmates, shouting contests, and inmates banging on doors and making noise all day (*Id.* at 59). The constant noise and light kept him from sleeping (*Id.* at 59, 69-70). He was aware of inmates getting tickets for creating excessive noise (*Id.* at 63).

Love had access to laundry facilities to clean his clothing and bedspread (*Id.* at 76). He was provided food three times a day (*Id.* at 76-77) and had access to medical care (*Id.* at 83). Love had one visit from his son and visits from his mother once every month or two months while at Pontiac (*Id.*). Love was allowed five visits per month (*Id.* at 84).

Love was allowed yard privileges for two hours a day (*Id.*). While in the yard, inmates were confined to one-man cells (*Id.* at 45). The cells were larger than the living cells and large enough to do exercises, such as push-ups, air squats, and jumping jacks (*Id.* at 46). Love was able to communicate with other inmates while in the cells in the yard (*Id.* at 47).

Love was hit with feces thrown by an inmate while in the yard (*Id.* at 49). There were rules against urine throwing and feces throwing (*Id.* at 48) and Love was aware of inmates getting tickets for throwing feces (*Id*. at 63). Love had access to a television after his first month in segregation at Pontiac (*Id*. at 85).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Defendants Veath and Hart argue that they are entitled to summary judgment because the discipline imposed on Love did not require due process and because Love actually received all

protections required in prison disciplinary proceedings that affect liberty interests. Defendants also assert the affirmative defense of qualified immunity.

Although incarceration necessarily makes many rights and privileges of ordinary citizens unavailable to inmates, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). In particular, prisoners may not be deprived of life, liberty, or property without due process of law. *Id.* at 556 (citations omitted). To prove a due process claim, a plaintiff must establish that: (1) there was a protected interest at stake that necessitated the protections demanded by due process; and (2) the disciplinary hearing process was not in accordance with procedural due process requirements. *See Crane v. Logli*, 992 F.2d 136, 138 (7th Cir. 1993).

With respect to the first element, a liberty interest only exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate's liberty interest in avoiding segregation is limited. *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir.2009). In assessing whether disciplinary segregation gives rise to a liberty interest, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* (emphasis in original).

Although relatively short terms of segregation rarely give rise to an inmate's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a long term of confinement combined with atypical and significant hardships. *See Marion,* 559 F.3d at 697–98 (citing *Wilkinson v. Austin,* 545 U.S. 209, 224 (2005); *Sandin,* 515 U.S. at 486). In *Marion,* the Seventh Circuit found that "six months of segregation is not such an extreme term

and, standing alone, would not trigger due process rights." 559 F.3d at 698 (quoting *Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995)) (internal quotations omitted). But the Court has not settled on the baseline of what constitutes an extreme term in segregation.

Love's confinement in segregation was a total of eleven months. In and of itself, eleven months in segregation does not automatically trigger Fourteenth Amendment due process protections. Therefore, the court must examine the conditions of Love's confinement to determine if they were so extreme as to implicate due process considerations.

Love was provided with three meals a day, access to medical care, and basic toiletry items such as soap and shampoo. He was allowed to go outside in the yard for two hours a day for exercise and could communicate with other inmates while in the yard. Love had access to television after his first month in segregation. He was even allowed multiple visits with his mother and son.

Love has not demonstrated how his complaints concerning noise from other prisoners and the constant light were significantly harsher in segregation than in the general prison population. He complains about the acts of other prisoners regarding excessive noise and feces throwing, but acknowledges that when caught, inmates engaging in such behavior were ticketed by prison staff.

For the foregoing reasons, the evidentiary record regarding the conditions in segregation is insufficient to establish an atypical and significant hardship. As such, Love cannot show that he suffered a deprivation of a liberty interest that entitled him to due process protections. That

being the case, it is unnecessary for the Court to analyze whether procedural due process requirements were met.[2]

## Conclusion

The Motion for Summary Judgment filed by Defendants (Doc. 68) is **GRANTED**. Plaintiff Rodney Love's claims are **DISMISSED WITH PREJUDICE** as to all remaining defendants. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: January 5, 2018**

    **s/ Staci M. Yandle**
    **STACI M. YANDLE**
    **United States District Judge**

---

[2] Defendants also assert that they are entitled to qualified immunity on Love's claims. Because the Court has concluded that the evidence does not create a genuine issue of material fact as to whether Defendants violated Love's Fourteenth Amendment rights to due process, it will not address the issue of qualified immunity.